UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JAMES M. BROWN**, <br><br> Plaintiff, <br><br> v. <br><br> **DAVITA VANCE-COOKS, Acting Public Printer of the U.S. Government Printing Office**, <br><br> Defendant. | Civil Action No. 10-cv-1108 (RLW) |

## MEMORANDUM OPINION

Plaintiff James M. Brown ("Brown") has stated four counts against the Public Printer[1] of the U.S. Government Printing Office ("GPO"), claiming discrimination by GPO based on Brown's age, sex, and race, as well as retaliation by GPO against Brown for engaging in protected activity. Presently before the court is GPO's motion for summary judgment (Dkt. No. 31), on which the Court held a hearing on January 17, 2013. Upon careful consideration of the parties' briefs and the arguments presented by counsel, for the reasons stated below the GPO's motion will be **GRANTED**.

**I. Factual Background**

Brown filed his complaint in this action on June 30, 2010, stating four counts. (Dkt. No. 1). He alleges claims of race, sex, and age discrimination, as well as retaliation, based on a variety of interactions with his former supervisor Jeffrey Brooke ("Brooke").

---

[1]   Although Brown initially filed his complaint against Robert C. Tapella (Dkt. No. 1), Acting Public Printer Davita Vance-Cooks is substituted as the defendant pursuant to Federal Rule of Civil Procedure 25(d).   See Davita Vance-Cooks Biography, http://www.gpo.gov/pdfs/about/Vance-Cooksbio.pdf (last visited Feb. 1, 2013).

1

GPO employed Brown for over 30 years, mostly as an Audio Visual Production Specialist; his last day there was September 30, 2008.  (Id. ¶¶ 4, 7, 8).  GPO began a major reorganization around 2003 and placed Brown in a new section called the Employee Communications Office ("ECO").  (Id. ¶ 12).  In July 2004, Brooke became ECO Director.  (Id. ¶ 13).  Brooke is Caucasian; Brown is African American.  According to Brown, at their first meeting Brooke made comments about his own homosexuality that Brown perceived as "odd."  (Id. ¶ 14).  At the same meeting, Brown claims that Brooke spoke negatively about GPO's former Chief of Human Capital, which Brown later came to believe to be because the former Chief is African American.  (Id. ¶ 15).[2]

Brown's complaint includes numerous allegations.[3]  He claims that in 2004 and 2005 Brooke unfairly divided GPO photography equipment, and also that there was an unequal distribution of work.  (Dkt. No. 1, ¶¶ 18, 25, 33).[4]  Brown alleges that on April 29, 2005, Brooke called him a "delivery boy" during a conversation about personally dropping off photos to GPO clients, which Brown found to be racist because of the use of the word "boy."  (Id. ¶ 35).  Brooke disputed this account, stating that after he "suggested that since the rest of the team often delivered final products to their customers, [Brown] should do the same . . . .  [Brown] angrily responded[,] '[A]re you calling me a delivery boy?!'"  (Dkt. No. 34, at 21).

---

[2]   When asked at his deposition whether the comments about the former Chief caused him to believe that Brooke had "showed some type of racial antipathy toward African Americans," he replied: "Not on that same day."  (Dkt. No. 31-3, at 36:14-21).  Brown also stated the comments about the former Chief "didn't really so much upset me at the time . . . ."  (Id. at 35:8-16).

[3]   His deposition includes even more claims.  For example, Brown claims that Brooke "sent me so much e-mail that my computer would break down."  (Dkt. No. 31-3, at 169:8-20).

[4]   The allegations here are in some tension with Brown's comment at his deposition that "there was no problem—sharing the equipment was not a part of my complaint."  (Dkt. No. 31-3, at 68:22-69:16).

Brooke wanted Brown to move to the floor where Brooke and the remainder of the group worked in 2006.  (Dkt. No. 1, ¶ 30).  Brown complained to William Harris ("Harris"), GPO's Chief Human Capital Officer, "and explained the discomfort he had working closely with Mr. Brooke because of his comments about homosexuality."  (Id.).  Harris said there was nothing he could do, so Brown then met with Nadine Elzy, GPO's Director of the Equal Employment Office ("EEO").  Elzy convinced Brooke to allow Brown to remain on his current floor.  (Id. ¶¶ 30-31).

Brown received a "fully successful" review for fiscal year 2007 in early September 2007, but the review contained some caveats.  (See Dkt. Nos. 35-16, 35-18).  The review notes that Brown "did not adhere" to certain requirements, and "that similar performance in FY08 will not be rated as fully successful."  (Dkt. No. 35-16, at 1).  On September 11, 2007, Brooke sent Brown a performance plan for fiscal year 2008.  (See Dkt. No. 35-19).  Brown responded a few days later, stating in part [sic]:  "I no longer know what my duties are let me make something clear to you right now I am not somekind of personal ( SLAVE BOYTOY ) if you think you gonna Pimp me you must be crazy telling me I better communicate with Creative Services Designers, respect my peers.  think you gonna Pimp me.  you want a BoyToy go someplace else."  (Dkt. No. 35-18, at 2).  Brown contacted Harris and Nadine Elzy of EEO in September 2007 after these events regarding what he perceived as unfair treatment.  (See Dkt. No. 35-8).  He told Brooke he was doing so.  (Dkt. No. 35-18, at 3).

Brooke alleged certain specific problems with Brown's performance in early December 2007 (see Dkt. No. 31-8, at 8-9), and things deteriorated quickly.  Brown worked at an event on December 12, 2007, where he says his photographic equipment stopped working suddenly.  (Dkt. No. 34, at 15).  The Defendant claims that the equipment was subsequently tested and found to work, but set to the wrong modes.  (Dkt. No. 31-1, at 6).  A report from a GPO

3

Grievance Committee later concluded that Brown "had not adequately prepared the equipment for the event since he had not taken sufficient measures to prepare the backup equipment in advance." (Dkt. No. 35-23, at 2). The Defendant also claims that Brown took GPO property out of the building without permission; Brown claims he merely put a personal memory card in a GPO camera with home photos from Thanksgiving by accident, not that he ever took the camera out of the office. (Dkt. No. 1, ¶¶ 40-41). Regarding a separate event on December 15, 2007, the Defendant contends that Brown failed to attend a standard pre-event briefing, showed up late, and missed key photos. (Dkt. No. 31-1, at 6-7). The same Grievance Committee report concluded that Brown's "actions resulted in an unacceptable work product" from the December 15 event. (Dkt. No. 35-23, at 2).

In January 2008, Brown received a notice of proposed removal from Brooke, which included information about several of the issues from December 2007. (See Dkt. No. 31-5). Brown contacted the EEO the same day. (Dkt. No. 31-8, at 5). On February 15, 2008, Brown filed a Formal Complaint of Discrimination, alleging race and sex discrimination. (Dkt. No. 31-9). On February 28, 2008, Brooke formally proposed Brown's removal. (Dkt. No. 31-6). Upon further review, including an appeal through the American Federation of Government Employees ("AFGE") Union grievance process, the penalty of removal was deemed far too severe and Brown received a three-day paper suspension. (Dkt. No. 35-23). The Grievance Report concludes: "It is hoped that by having the gravity of this matter brought to his attention[, Brown] will correct his future performance without additional discipline." (Id.). On his May 2008 performance evaluation, Brown received unsatisfactory feedback on photographic quality, scanning, and customer satisfaction. (Dkt. No. 34-1, ¶ 25).

As of May 1, 2008, Brooke placed Brown on a Performance Improvement Plan ("PIP"). (Dkt. No. 31-11). Brown's union "agree[d] with the implementation of the performance plan." (Dkt. No. 31-14, at 2). Initially proposed to run through July 2008, the PIP was later extended through September because, according to Brown, he "had become very ill and was under a doctor's care due to the harassment and stress placed on him by Mr. Brooke." (Dkt. No. 1, ¶ 50). On August 5, 2008, Brooke issued Brown a notice of proposed removal for not successfully performing under the PIP. (Dkt. No. 31-12). GPO stated "[t]he quality of the photographs Mr. Brown submitted for review were unacceptable 69% of the time; Plaintiff did not meet the scanning goals set for him even though they were actually reduced during the PIP; customer satisfaction scores did not improve because Mr. Brown did not meet with agency clients before the events he photographed, and the photographs he produced were of insufficient quality." (Dkt. No. 31-1, at 8-9). The proposed removal was approved by GPO's Chief Technology Officer "because the record demonstrated that Plaintiff's unacceptable performance did not improve despite GPO's repeated efforts to help the Plaintiff meet those performance improvement goals." (Id. at 9).[5] Plaintiff retired from GPO on September 30, 2008, claiming he did so "under duress." (Dkt. No. 31-16). On November 14, 2008, Brown filed an EEO complaint alleging that Brooke discriminated against him because of his race, color, religion,

---

[5] GPO claimed in their summary judgment motion that this official based his decision on what are known as the Douglas factors. (Dkt. No. 31-1, at 9). After Brown attacked the appropriateness of this type of analysis (Dkt. No. 34, at 18-20), GPO then claimed they made a mistake in their summary judgment motion, and that the official did not consider the Douglas factors. (Dkt. No. 48, at 27).

national origin, sex, and age, and also alleging retaliation. (Dkt. No. 31-17).[6] On that EEO complaint he wrote: "I know that I passed the PIP program." (Id.).

Brown filed his complaint in this action on June 30, 2010. (Dkt. No. 1). After the completion of discovery, GPO moved for summary judgment on July 12, 2012. (Dkt. No. 31). The Court held a hearing on the motion on January 17, 2013.

## II. Summary Judgment Standard

Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009) (citing FED. R. CIV. P. 56(c) and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A genuine issue of material fact exists if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252. The nonmoving party cannot simply rely on allegations or conclusory statements. Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999). He can defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record." Id. (quoting Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993)).

---

[6] This is the only place Brown mentions discrimination based on religion and national origin. Because these claims are not raised in the complaint or summary judgment briefing, they are outside the scope of this action.

**III. Analysis**

    **A. Claims For Race, Age, And Sex Discrimination**

        **1. Administrative Exhaustion Requirement Under Title VII**

Brown brings claims for race and sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* To bring a viable claim under Title VII in federal court, a Plaintiff must first exhaust their administrative remedies, and must do so in a timely manner. In the case of a federal employee, "[a]n aggrieved person must initiate contact with a[n EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). "[T]imely exhaustion of administrative remedies is a prerequisite to a Title VII action against the federal government." Steele v. Schafer, 535 F.3d 689, 693 (D.C. Cir. 2008) (internal quotation marks omitted). "Dismissal is required when a plaintiff fails to exhaust his administrative remedies with respect to particular claims." Ndondji v. InterPark, Inc., 768 F. Supp. 2d 263, 276-77 (D.D.C. 2011) (citing Rann v. Chao, 346 F.3d 192, 194-95 (D.C. Cir. 2003)).

This Court must first determine whether Brown has exhausted either of his Title VII claims. Plaintiff stated in his complaint that he "has exhausted his administrative remedies pursuant to Title VII, in that plaintiff submitted to and cooperated fully with the Equal Employment Opportunity informal counseling procedure <u>which he initiated within 45 days of the relevant adverse employment action(s),</u> followed by timely filing of formal administrative charges . . . ." (Dkt. No. 1, ¶ 6) (emphasis added). In its answer, GPO admitted this claim. (Dkt. No. 3, ¶ 6).

The parties briefed the issue of exhaustion in their summary judgment papers. In its summary judgment memorandum, GPO argued that Brown's discrimination and retaliation

claims, "<u>to the extent not based on his final proposed removal</u>, are not actionable . . . ." (Dkt. No. 31-1, at 13) (emphasis added).[7]  Brown's opposition to this argument cites no law, and asserts, with only the support of an EEO Directive, that he did not need "to exhaust his administrative remedies with respect to Mr. Brooke's ongoing hostility, and/or racial bias . . . [for] every occurrence that may be evidence of discriminatory intent." (Dkt. No. 34, at 28).  Realizing that he may have failed to contest certain issues related to exhaustion, at the hearing on GPO's summary judgment motion Brown's counsel offered that "I probably have to say a little bit of a mea culpa here" regarding his failure to brief the issue, and instead argued that exhaustion was "so clear" because of the answer to paragraph six of the complaint.  (See Mot. for Summ. J. Hr'g Tr. ("Tr.") 25:1-24, Jan. 17, 2013).

This Court will not ignore GPO's admission in its answer that Brown exhausted certain administrative remedies with respect to his discrimination claims.  See FED. R. CIV. P. 56(e)(1).  Nor will it ignore what Brown says about that exhaustion in his complaint:  that it is limited to adverse actions within 45 days of the filing of his EEO complaints.  In his opposition to the summary judgment motion, Brown states that he establishes a prima facie case of racial discrimination because "GPO took adverse action against Mr. Brown, forcing his retirement on the day he was to be fired, that his performance was acceptable, and that he was replaced by a man not in his protected class hired from outside GPO."  (Dkt. No. 34, at 2).  Therefore the claim for racial discrimination can proceed as exhausted, but only with respect to Brown's alleged "forced retirement."  However because Brown's sex discrimination claim is based only on one comment from 2004, he failed to exhaust this claim.  (See Dkt. No. 1, ¶ 67 (alleging sex discrimination "in that Mr. Brooke resented [Brown's] resistance to Mr. Brooke's homosexual

---

[7]   The issue of exhaustion with respect to Brown's claim of retaliation is examined below in section III.B.

8

talk and lifestyle"); see also Tr. 53:10-12, Jan. 17, 2013 ("The sex discrimination is based on the highly improper discussion that Mr. Brooke had with Mr. Brown about homosexuality . . . .")). Therefore summary judgment regarding Brown's claim of sex discrimination will be granted for failure to exhaust.

### 2. Brown's Claim Of Discrimination Based On Race

No federal agency can discriminate in employment on the basis of race. Specifically, Title VII provides that "[a]ll personnel actions affecting employees . . . in the Government Printing Office . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16. It is unlawful for an employer "to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Id. § 2000e-2(a)(1).

GPO has asserted a legitimate, non-discriminatory reason for its decision to terminate Brown. Therefore this Court "need not—and should not—decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas [Corp. v. Green, 411 U.S. 792 (1973)]. Rather, in considering an employer's motion for summary judgment or judgment as a matter of law in those circumstances, the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex or national origin?" Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008) (citations omitted). In so doing, the Court must consider: "(1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanations for its actions; and (3) any

9

further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment)." Czekalski v. Peters, 475 F.3d 360, 363-64 (D.C. Cir. 2007) (quoting Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc)). "This boils down to two inquiries: could a reasonable jury infer that the employer's given explanation was pretextual, and, if so, could the jury infer that this pretext shielded discriminatory motives?" Murray v. Gilmore, 406 F.3d 709, 713 (D.C. Cir. 2005).

    Fatal to Brown's claim of race discrimination is that he fails to rebut GPO's proferred explanation for the decision to fire him. To be clear, GPO asserts their reason for proposing Brown's termination is that after being placed on the PIP, and despite receiving help during it, "his performance did not improve, and he did not meet the goals for his improvement that were clearly set for him by Mr. Brooke." (Dkt. No. 33, ¶ 28). Brown does not dispute that he received training and coaching during the PIP. (Dkt. No. 34-1, ¶ 27). Brown also does not dispute that his performance did not improve; he simply states that his "performance was not at such a level that improvement was required in order to maintain satisfactory performance." (Id. ¶ 28). This is not a refutation, but a demurrer. Brown also purports to dispute GPO's explanation for firing him in 2008 by arguing that Brooke falsely criticized his performance in his fiscal year 2007 evaluation. But this too fails to address the salient point. The fiscal year 2007 evaluation occurred before several events that raised concerns for GPO, including the events of December 2007 described in the union Grievance Report that resulted in findings adverse to Brown. Brown cannot demonstrate falsity of the criticisms of his performance under the PIP solely by challenging criticisms of his performance predating the PIP. Brown has simply

not proven that GPO's reasons were pretext, and a district court "may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting Milton v. Weinberger, 696 F.2d 94, 100 (D.C. Cir. 1982) (quotation marks omitted).

GPO's explanation for proposing to terminate Brown contains other assertions that Brown fails to dispute. GPO states that during the PIP, "[t]he quality of the photographs Mr. Brown submitted for review were unacceptable 69% of the time; Plaintiff did not meet the scanning goals set for him even though they were actually reduced during the PIP; customer satisfaction scores did not improve because Mr. Brown did not meet with agency clients before the events he photographed[;] and the photographs he produced were of insufficient quality." Brown does not dispute the poor rating of his work. Nor does Brown dispute that he failed to meet with agency clients before events. (See Dkt. No. 34-1, ¶ 28). To survive summary judgment on a Title VII claim, the nonmovant must dispute the alleged legitimate, non-discriminatory reason offered by the employer. Here Brown has not done so. The only issue Brown disputes is that the quality of the photographs was rated by Brooke and Terri Ehrenfeld, and therefore "[n]o effort was made to involve persons not within Mr. Brooke's chain of command." (Id.). Not only does Brown offer no citation for this claim, it is contradicted in several places, including by Brown himself. (See, e.g., id. at 24 ("Under the PIP, Ron Keeney, an employee from another section, apparently concurred in Mr. Brooke's evaluations of Mr. Brown's photographs . . . .")). While there is a dispute as to whether Brown completed the scanning goals of the PIP, and produced usable scanned material, this is of no moment. Hairston v. Boardman, Civil Action No. 08–1531 (RWR), 2013 WL 165017, at *4 (D.D.C. Jan. 16, 2013) ("To defeat a Title VII defendant's summary judgment motion, a plaintiff must demonstrate

11

pretext as to all of the defendant's proffered neutral explanations, not just some of them.") (citations omitted); see also Aka, 156 F.3d at 1291 ("[T]here may be no legitimate jury question as to discrimination in a case in which a plaintiff has created only a weak issue of material fact as to whether the employer's explanation is untrue, and there is abundant independent evidence in the record that no discrimination has occurred.").

GPO offers one final statement in its Statement of Material Facts Not In Genuine Dispute with respect to their alleged legitimate, non-discriminatory reason for proposing Brown's termination. They state that "[d]espite the PIP, given these continued performance deficiencies, Mr. Brooke proposed Plaintiff's removal for unacceptable performance on August 5, 2008." (Dkt. No. 33, ¶ 28). Brown's response is to call this claim "[u]ndisputed, except to the extent that GPO contends removal was justified." (Dkt. No. 34-1, ¶ 28). Because this response does not directly dispute that there were "continued performance deficiencies" or delineate any evidence of acceptable performance, Brown effectively concedes the issue.

Brown suggests that GPO's reasons for proposing his dismissal are not accurate. But aside from the discussion above noting that Brown failed to demonstrate this point with evidence, the issue for this Court "is not the correctness or desirability of the reasons offered, but whether the employer honestly believes in the reasons it offers." Fischbach, 86 F.3d at 1183 (quoting McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 373 (7th Cir. 1992)) (some alterations to quotation); see also Brady, 520 F.3d at 496. Brown offers nothing to suggest that GPO did not honestly believe in the reasons offered, and it is not this Court's role to sit as a "super-personnel department that reexamines an entity's business decisions." See Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986).

Brown also claims that certain previous evaluations by Brooke noting fully successful work somehow indicate discrimination. But the fact that Brooke himself had previously given Brown fully successful evaluations cuts the exact opposite way. "[C]ourts in this district have observed that an inference of nondiscrimination is appropriate when the same person who hired or promoted the employee later proposes that an adverse action be taken against him." Kelly v. Mills, 677 F. Supp. 2d 206, 223 (D.D.C. 2010) (citations omitted) (emphasis added). Moreover, "[a]n employer's description of an employee's performance as unsatisfactory will not be deemed pretextual just because the employee was a good performer at an earlier time." Hicks v. Gotbaum, 828 F. Supp. 2d 152, 163 (D.D.C. 2011).

The argument advanced here by Brown "would mean that every employee who is disciplined, demoted, or fired for alleged misconduct could sue for employment discrimination based on race, color, religion, sex, or national origin and—merely by denying the underlying allegation of misconduct—automatically obtain a jury trial." Brady, 520 F.3d at 496 (emphasis in original). But there is "no support" for such a proposition. Id. Because GPO has advanced several uncontested reasons for proposing to remove Brown from his position, the agency's summary judgment motion regarding a claim of race discrimination will be granted.

### 3. Brown's Claim Of Discrimination Based On Age

Brown brings a claim for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, that cannot withstand scrutiny. Claims under the ADEA are evaluated under the same burden-shifting standard noted above established in McDonnell Douglas and refined by Brady. See Hicks, 828 F. Supp. 2d at 160. Brown does not even establish a prima facie case of age discrimination, which includes a demonstration that the employee was satisfactorily performing his job and was replaced by a younger person. See

Paquin v. Fed. Nat'l Mortg. Ass'n, 119 F.3d 23, 26 (D.C. Cir. 1997). When asked at the hearing on GPO's summary judgment motion what evidence Brown is relying on for this claim, counsel for Brown answered: "Your Honor, we don't have direct evidence of age discrimination. . . . I don't have any evidence that either Mr. Brooke or the replacement is under 40, so the evidence on that is inconclusive." (Tr. 52:16-53:7, Jan. 17, 2013). Even assuming Brown did state a prima facie case, he does nothing to rebut GPO's legitimate, non-discriminatory reasons for his termination. Brooke is never alleged to have made a single comment about age, and the record is entirely devoid of any evidence of pretext regarding this claim. Accordingly, summary judgment will be granted with respect to Brown's claim of age discrimination.

### B. Brown's Claim For Retaliation

Brown claims retaliation in count four of his complaint because "he has not received a promotion; was placed on a Performance Improvement Plan for no reason; was falsely deemed unsuccessful in the PIP; and was threatened with termination." (Dkt. No. 1, ¶ 81). Brown failed to exhaust any claim of retaliation for a failure to promote. His other claims related to retaliation fail for different reasons, as described below.

#### 1. Allegation Of Retaliation Based On Failure To Promote

Brown's claim of retaliation for failure to promote is rejected because he did not exhaust it administratively. A claim for retaliation must be exhausted. See Woodruff v. Peters, 482 F.3d 521, 528 (D.C. Cir. 2007) ("[T]he exhaustion requirement from 29 C.F.R. § 1614.105(a)(1) at least applies to retaliation claims as well.") (citation omitted). Brown claims to have suffered retaliation in several ways, including that "he has not received a promotion." (Dkt. No. 1, ¶ 81). His later EEO retaliation claim does challenge the PIP and the effort to remove him, and thus these claims were exhausted and will be analyzed below. But when he raised the issue of non-

promotion with the EEO in his first discrimination claim in January 2008, he failed to include a retaliation claim. (See Dkt. No. 31-8). In addition, Brown alleges that the failure to promote him "is part of pattern of discrimination beginning in or about 2004." (Dkt. No. 1, ¶ 8). Therefore the retaliation claim for failure to promote is too stale and will be dismissed. See Payne v. Salazar, 619 F.3d 56, 64-65 (D.C. Cir. 2010).

Even if Brown had exhausted his non-promotion retaliation claim administratively, it would fail. A failure to promote claim is analyzed by asking "whether a similarly situated person . . . requested and received the benefit she sought." Taylor v. Small, 350 F.3d 1286, 1294 (D.C. Cir. 2003) (quoting Cones v. Shalala, 199 F.3d 512, 517 (D.C. Cir. 2000)). Brown alleges discrimination regarding his non-promotion in part because two ECO specialists were promoted (Dkt. No. 1, ¶ 54), but when asked about them at his deposition he admitted they did not occupy the same type of position as he did (Dkt. No. 31-3 at 124:8-13). The only two other people he complains about receiving promotions were his supervisors. (Dkt. No. 1, ¶ 53). Thus, Brown has failed to introduce sufficient evidence to establish a failure to promote claim.

### 2. Brown's Other Allegations Of Retaliation

Title VII makes it unlawful for an employer to retaliate against an employee for engaging in protected activity such as filing a charge of discrimination. See 42 U.S.C. § 2000e-3(a); see also Holcomb v. Powell, 433 F.3d 889, 901 (D.C. Cir. 2006). Under Title VII, a Plaintiff bringing a successful retaliation claim must demonstrate: "(1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." Jones v. Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009) (citation omitted). Summary judgment should be granted for an employer where an employee cannot demonstrate that every proffered nonretaliatory reason for the termination was pretextual. See,

e.g., Kirk v. Small, No. 03-5360, 2004 WL 1249294, at *1 (D.C. Cir. June 7, 2004) (per curiam) (granting motion for summary affirmance on retaliatory termination claim).

Assuming, as this Court will, that Brown states a prima facie claim of retaliation, the burden then shifts to the GPO to produce a "legitimate, nondiscriminatory reason" for its actions. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981) (quoting McDonnell Douglas, 411 U.S. at 802). If GPO does so, the issue becomes "whether a reasonable jury could infer . . . retaliation from all the evidence." Carter v. George Washington Univ., 387 F.3d 872, 878 (D.C. Cir. 2004).

Towards the end of 2007, GPO began to encounter what it believed to be a series of problems with Brown's work. Brown allegedly removed property from the building, failed to attend meetings to prepare for projects, did not turn in adequate work, and claimed equipment did not work when GPO alleged it did. "An employer is entitled to rely on his perception of an employee's work performance." Vasilevsky v. Reno, 31 F. Supp. 2d 143, 151 (D.D.C. 1998) (citation omitted). As our Circuit has stated, "We review not the correctness or desirability of the reasons offered but whether the employer honestly believes in the reasons it offers." Woodruff, 482 F.3d at 531 (citation and internal quotations omitted). Even viewing the evidence in the light most favorable to Brown, Brooke's decision to place Brown on a PIP in 2008 appears reasonable and based upon an honest belief that Brown was performing poorly.

After Brooke placed Brown on a PIP, evaluations of his work indicate it did not improve. According to an evaluation by the GPO, "[t]he quality of the photographs Mr. Brown submitted for review were unacceptable 69% of the time; Plaintiff did not meet the scanning goals set for him even though they were actually reduced during the PIP; customer satisfaction scores did not improve because Mr. Brown did not meet with agency clients before the events he

photographed[;] and the photographs he produced were of insufficient quality." (Dkt. No. 31-1, at 8-9). Courts are understandably "reluctan[t] to become involved in the micromanagement of everyday employment decisions." Forman v. Small, 271 F.3d 285, 291 (D.C. Cir. 2001) (citations omitted). Here GPO documented problems with Brown's work and engaged in an effort to help him improve, but those involved in the review of Brown's work concluded he failed to do so. Although this happened after complaints by Brown about his treatment, the documentation reveals a legitimate basis for GPO's actions.

Brooke was not alone in finding fault with Brown's performance. Vicki Barber, the Director of Human Capitol Operations, reviewed Brooke's February 2008 proposed removal of Brown and agreed with the grounds advanced, although not the punishment. (Dkt. No. 31-1, at 7). The subsequent review by GPO and AFGE did not exonerate Brown—they kept a 3-day paper suspension on the record. (Id. at 8). Ron Keeney reviewed Brown's work and found his photography work seriously lacking. (Dkt. No. 31-14). And GPO's Chief Technology Officer approved Brown's proposed removal in September 2008. (Dkt. No. 31-1, at 9). With the documentation of problems involving Brown, and acknowledgement of those problems by many people at GPO, no reasonable jury could find that Brown was placed on the PIP for "no reason" or that Brown was "falsely deemed unsuccessful in the PIP." See Kelly, 677 F. Supp. 2d at 227 ("The Court is further persuaded that no pretext exists by the fact that supervisors other than Mr. Sanchez . . . participated in and approved of the decision to terminate Mr. Kelly."). And given this landscape, the record does not support a finding that a threat of termination can be seen as retaliatory.

Brown argues that GPO improperly used "highly subjective" criteria in evaluating his work. (Dkt. No. 34, at 24-25). He cites for support both Fischbach and Aka. (Id.). There are

two main problems with this argument.  First, there is some inherent subjectivity in evaluating photography.  GPO tried to alleviate this by reviewing with Brown the standards by which he would be evaluated, including sending him the criteria and meeting with him regularly.  This Court is in no position to be an art critic, and this is in part why our Circuit has stated that "an employer's action may be justified by a reasonable belief in the validity of the reason given even though that reason may turn out to be false."  George v. Leavitt, 407 F.3d 405, 415 (D.C. Cir. 2005) (citation omitted).  Second, it is true that both Fischbach and Aka are highly critical of placing great weight on evaluation criteria such as "interpersonal skills."  See Aka, 156 F.3d at 1298.  But Brown's evaluation hinged not on his interpersonal skills, but on his ability to engage in interpersonal communication at all.  The failure to communicate with clients and understand their needs does not require subjective analysis to evaluate, but can be evaluated objectively.  Regardless, an employer can offer subjective reasons "as long as the employer articulates a clear and reasonably specific factual basis on which it bases its opinion."  Stover v. Safeway, Inc., No. Civ. 04-490(RCL), 2005 WL 1528698, at *4 (D.D.C. June 29, 2005) (citation omitted).

     Brown also suggests that GPO has fabricated reasons to justify its decision to propose Brown's termination.  He states that because Brooke had previously given Brown fully successful reviews while at GPO, but said in a December 2009 affidavit that "[f]rom my first days at GPO in 2004, it was clear to me that Mr. Brown's performance was never acceptable," (Dkt. No. 35-10, at 12), Brooke lied in his affidavit.  (Dkt. No. 34, at 11).  He also claims that Brooke lied when he said that Brown produced no "usable" photographs at the December 12, 2007 event, (Dkt. No. 31-4, ¶ 9), because Plaintiff's exhibits 34 & 35 contain acceptable product.

These supposed fabrications, if in fact that is what they are,[8] do not change the Court's analysis. These are part of the lengthy narrative regarding the relationship between the parties, not statements about why Brown was not successful during the PIP. Brown fails to demonstrate any fabrications with respect to his performance under the PIP. This argument fails for that reason alone, because it does not seriously dispute the reasons for Brown being placed on a PIP nor his performance during it. Indeed, with respect to GPO's negative evaluation of Brown under the PIP, at oral argument counsel for Brown stated: "I'm not saying that's a provable lie in what happened during the PIP . . . ." (Tr. 38:5-6, Jan. 17, 2013).

Second, it is important to be clear on what the legal standard actually is. At the recent hearing in this case, counsel for Plaintiff, citing Colbert v. Tapella, 649 F.3d 756 (D.C. Cir. 2011), stated that "a lie by a manager about the reasons for an adverse action is enough. That is enough to get to a jury on the issue of pretext." (Tr. 29:15-20, Jan. 17, 2013). But the holding in Colbert is not so stark. The opinion states: "We do not suggest merely showing the employer's explanation to be false would be sufficient [to defeat summary judgment]." See id. at 760. And the issue in Colbert was that the manager lied about the reasons directly relevant to the nonselection of Colbert, not that he lied about other matters. Here Brown points to no fabrications regarding his performance under the PIP. In fact his counsel represented that he could not do so. When the only evidence that an employer fabricated the reasons for proposing a termination is the employee's personal opinion, summary judgment for the employer is appropriate. Vatel v. Alliance of Auto. Mfrs., 627 F.3d 1245, 1247 (D.C. Cir. 2011).

Brown fails to challenge the nondiscriminatory reasons advanced by GPO, and also fails to provide evidence by which a reasonable juror could find GPO's actions were pretextual.

---

[8] Brooke's comment about his "first days" at GPO, for example, may very well be more hyperbolic than mendacious.

"There is simply no evidence that challenges the declarations of Agency employees who offer nondiscriminatory bases for their rating of plaintiff's performance and their decisions to deny him promotions . . . ." Price v. Greenspan, 374 F. Supp. 2d 177, 186 (D.D.C. 2005). Brown has only "offered the type of self-serving allegations that are simply insufficient to establish pretext." Deloatch v. Harris Teeter, Inc., 797 F. Supp. 2d 48, 60 (D.D.C. 2011) (citation omitted). And while Brown claims he continued to perform well in certain aspects, this is far from sufficient. "It is nonsensical to suppose that a plaintiff should be able to demonstrate that an employer's stated reason for its adverse action is pretextual merely because the employer cannot prove that the plaintiff was deficient in every aspect of his job performance." Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO, 507 F. Supp. 2d 93, 108 (D.D.C. 2007) (emphasis in original). Summary judgment is therefore appropriate with respect to Brown's claim of retaliation.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 31) is **GRANTED**. An Order accompanies this Memorandum.

Date: February 1, 2013

ROBERT L. WILKINS
United States District Judge